**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

SHARON E. LONGO, )
)
        Plaintiff, ) Civil Action No. 10-116 Erie
)
   v. )
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
        Defendant. )

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., District Judge.

### I. INTRODUCTION

    Sharon E. Longo ("Plaintiff"), commenced the instant action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), denying her claims for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. Plaintiff filed her application on December 6, 2006, alleging disability since June 1, 2006 due to "acute depression", "[g]all [b]ladder surgery" and "aches in joints" (AR 101-103).[1] Her application was denied and she requested and was granted an administrative hearing before an administrative law judge ("ALJ") (AR 59-64; 81). Following a hearing held on October 27, 2008 (AR 33-54), the ALJ concluded, in a written decision dated November 21, 2008, that Plaintiff was not entitled to a period of disability or DIB under the Act (AR 9-17). Plaintiff's request for review by the Appeals Council was denied (AR 1-5), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). Plaintiff filed her complaint in this Court on May 12, 2010 challenging the ALJ's decision. Presently pending before the Court are the parties' cross-motions for summary judgment. For the following

---

[1] References to the administrative record [ECF No. 5], will be designated by the citation "(AR ___)".

1

reasons, the Commissioner's motion will be denied and the Plaintiff's motion will be granted only to the extent she seeks a remand for further consideration.

## II. BACKGROUND

Plaintiff was 58 years old on the date of the ALJ's decision and has a high school education earned through a G.E.D. (AR 16). She has special training in bookkeeping, and past relevant work experience as a bar/restaurant owner (AR 144-145; 168). Plaintiff reported that she stopped working after her business was destroyed by a fire in May 2006 (AR 140).

The relevant medical records reveal that Plaintiff had a laparoscopic cholecystectomy (gallbladder surgery) for symptomatic cholelithiasis (gallstones) on September 18, 2006 (AR 202). Ten days after surgery her incision was healing well and she had no complaints (AR 199). In October and November 2006, Plaintiff complained of depression to her primary care physician, Frank J. McLaughlin, D.O., and he prescribed Lexapro (AR 223-226).[2] On November 1, 2006, Dr. McLaughlin increased her Lexapro dosage amount (AR 225). When seen on November 9, 2006, Plaintiff was still withdrawn but her mood was better with the increased dosage amount (AR 223). She was diagnosed with depression and fatigue, "most likely" secondary to her depression (AR 223).

Psychologists Martin Meyer, Ph.D. and Julie Uran, Ph.D. performed a psychological evaluation of Plaintiff on January 25, 2007 (AR 237-242). Plaintiff reported a health history of shoulder and muscular pain, joint pain, daily headaches, and constant back pain (AR 238). Plaintiff stated that she had difficulty with extended sitting and standing, and was unable to engage in extended fine motor work, such as writing, computer work or sewing (AR 238). Plaintiff further reported that she received no mental health counseling, but took Seroquel and Lexapro (AR 238). Plaintiff claimed she would have difficulty sustaining employment due to poor concentration, lack of motivation and an inability to "keep [her] figures straight", noting that her husband handled their checkbook (AR 238). Plaintiff also reported feelings of helplessness, withdrawal, worthlessness and hopelessness, as well as suicidal ideation without intent or plan of action, and fatigue (AR 238). She reportedly engaged in verbal aggression,

---

[2] Dr. McLaughlin is no relation to the undersigned.

struck objects, and stated that she previously struck her husband (AR 238). She admitted to having homicidal thoughts, but denied any intent or plan of action (AR 238).

Drs. Meyer and Uran noted that Plaintiff was cooperative, properly attired and exhibited good hygiene (AR 238). Her speech was coherent and spontaneous, her mood and affect were situationally appropriate and she laughed intermittently (AR 239). There were no reported perceptual disturbances and her thought process was normal and relevant, although homicidal thought was admitted (AR 239). Drs. Meyer and Uran found evidence of excessive rumination regarding an expressed desire for relocation (AR 239). Plaintiff appeared guarded and/or suspicious of others, and her statements reflected low self-esteem and worthlessness (AR 239). Plaintiff was found to be of average intelligence with an adequate vocabulary, she was alert and oriented and had no difficulty recalling recent events, although she could not recall childhood experiences and reported limited childhood memories (AR 239). Plaintiff demonstrated appropriate social judgment and was a good narrator of personal history (AR 239-240). It was noted however, that she had difficulties with impulse control as marked by displays of anger (AR 239).

Plaintiff tested at a high school level on the WRAT-3 (AR 240). Personality testing indicated depression and mild anxiety, with ruminative tendencies, as well as social alienation, avoidance and paranoia (AR 240). Drs. Meyer and Uran diagnosed Plaintiff with major depression, recurrent, and generalized anxiety disorder, and assigned her a global assessment of functioning[3] ("GAF") score of 50 (AR 241). They opined that Plaintiff's functional limitations

---

[3] The Global Assessment of Functioning Scale ("GAF") assesses an individual's psychological, social and occupational functioning with a score of 1 being the lowest and a score of 100 being the highest. The GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) 34 (4th ed. 2000). An individual with a GAF score of 60 may have "[m]oderate symptoms" or "moderate difficulty in social, occupational, or school functioning;" of 50 may have "[s]erious symptoms (e.g., suicidal ideation ....)" or "impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job);" of 40 may have "[s]ome impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood"; of 30 may have behavior "considerably influenced by delusions or hallucinations" or "serious impairment in communication or judgment (e.g., ... suicidal preoccupation)"

included difficulties interacting with others and social withdrawal (AR 240-241). They found that she was a poor candidate for vocational rehabilitation, but recommended that she undergo therapy and psychiatric medication monitoring (AR 241).

On February 8, 2007, Juan B. Mari-Mayans, M.D., a non-examining state agency reviewing physician, reviewed the medical evidence of record and opined that Plaintiff could perform medium work with no limitations (AR 243-248). Dr. Mari-Mayans noted that Plaintiff alleged disability due to acute depression, gall bladder surgery and aches in her joints, and that she claimed limitations in standing, walking, lifting carrying and bending (AR 248). He found her statements regarding her symptoms and functional restrictions only partially credible, since the medical evidence established that Plaintiff underwent successful gall bladder removal surgery in September 2006 and had only treated infrequently for complaints of joint pain (AR 248).

On March 8, 2007, Sharon Becker Tarter, Ph.D., a state agency reviewing psychologist, reviewed the psychiatric evidence of record and determined that Plaintiff had mild limitations in completing activities of daily living and in maintaining social functioning, and moderate limitations in maintaining concentration, persistence or pace (AR 268).[4] Dr. Tarter completed a mental residual functional capacity assessment form, and opined that Plaintiff was only moderately limited in her ability to interact appropriately with the general public, and accept instructions and respond appropriately to criticism from supervisors (AR 256). Dr. Tarter found that Plaintiff was not significantly limited in all other work-related activities, including the abilities to remember locations and work-like procedures; understand, remember, and carry out very short and simple instructions; understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and maintain punctuality; sustain an ordinary routine; work in

---

or "inability to function in almost all areas ...; of 20 "[s]ome danger of hurting self or others ... or occasionally fails to maintain minimal personal hygiene ... or gross impairment in communication...." *Id.*

[4] Dr. Tarter was inadvertently referred to as "Dr. Foster" in the ALJ's decision.

4

coordination with or proximity to others; make simple work-related decisions; complete a normal workday and workweek; ask simple questions or request assistance; get along with coworkers; maintain socially appropriate behavior; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others (AR 255-256).

Dr. Tarter noted that Plaintiff suffered from depression, but had not been hospitalized and was prescribed psychotropic medications by her primary care physician (AR 257). She found Plaintiff was functional with respect to her activities of daily living and social skills, and her memory processes were intact (AR 257). Dr. Tarter concluded that Plaintiff was able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairments (AR 257).

On March 20, 2007, Plaintiff complained of left shoulder pain and joint pain when seen by Dr. McLaughlin (AR 285).

Plaintiff was evaluated by Tariq Qureshi, M.D. a psychiatrist at Stairways Behavioral Health Outpatient Clinic on April 24, 2007 (AR 300-302). Plaintiff complained of depression, tiredness, lack of motivation, diminished concentration and feelings of helplessness, hopelessness and worthlessness, but denied any suicidal or homicidal ideations (AR 300). Plaintiff reported that she took Lexapro and Seroquel for her symptoms as prescribed by Dr. McLaughlin, but they were not helpful (AR 300). On mental status examination, Dr. Qureshi reported that Plaintiff exhibited adequate hygiene, was cooperative, and maintained good eye contact (AR 301). Her speech was normal, her thought processes were organized and goal directed, and her insight and judgment were fair (AR 301). Dr. Qureshi noted her mood was depressed, but she denied any suicidal or homicidal thoughts, obsessions, compulsions or phobias (AR 301). Dr. Qureshi diagnosed Plaintiff with major depressive disorder and assigned her a GAF of 55 (AR 302). He switched her medications to Prozac and Trazedone (AR 302).

On May 24, 2007, Stairways treatment notes reflect that Plaintiff's depression had "eased somewhat" but her sleep problems persisted (AR 299). Dr. Qureshi reported that her mood was

less depressed and she denied experiencing any suicidal or homicidal ideations (AR 299). She was continued on Prozac and her Trazodone dosage was increased (AR 299).

On June 8, 2007, Plaintiff called Dr. McLaughlin's office and requested medication for arthritic pain and Dr. McLaughlin prescribed Motrin (AR 282). Plaintiff was seen by Dr. McLaughlin on June 19, 2007 for follow up of hypercalcemia (AR 281). No other concerns were noted, and her physical examination was unremarkable (AR 281). She was diagnosed with hypercalcemia and back pain, and continued on her medication regimen (AR 281).

On May 29, 2007, Plaintiff returned to Dr. McLaughlin and complained of lesions on her face and legs, increased fatigue and weight gain, but had no other complaints (AR 283). Her physical examination was unremarkable, and she was continued on her medication regimen (AR 283).

Plaintiff returned to Dr. Qureshi on June 21, 2007 who noted she was "doing well" on her medications and that her sleep issues had improved (AR 298). Dr. Qureshi reported that Plaintiff was pleasant, cooperative and well groomed, and her thoughts were well organized (AR 298). She was continued on her medication regimen (AR 298).

On August 15, 2007, Plaintiff reported increased depression and insomnia (AR 298). She denied suffering from any suicidal or homicidal ideations (AR 298). Dr. Qureshi increased her Prozac dosage (AR 298).

On September 5, 2007 Plaintiff reported that her depression had lifted with the increased Prozac dosage and she had minimal insomnia (AR 298). Dr. Qureshi reported that her mood and affect were "bright" and continued her medications (AR 298).

Dr. McLaughlin's treatment notes dated November 14, 2007 show that Plaintiff called Dr. McLaughlin's office requesting stronger pain medication since the Naproxen was "not working" and he prescribed Tramadol (AR 280).

At her appointment with Dr. Qureshi on November 15, 2007, Plaintiff reported that she was stressed about the upcoming holidays, as well as financial issues (AR 297). Dr. Qureshi noted that her mood and affect were mildly depressed and continued her medications (AR 297).

Plaintiff returned to Dr. McLaughlin on November 27, 2007 and complained of increased back and neck pain (AR 279). Her physical examination was unremarkable and she was assessed with "worsening back pain" (AR 279). She was referred for a pain management consultation (AR 279).

A cervical x-ray taken on December 6, 2007 showed mild degenerative spondylitic spurring at the C6-7 level and to a lesser extent, at the C5-6 level (AR 295).

Plaintiff was evaluated by A. Zielke, M.D. for treatment of chronic pain on December 10, 2007 (AR 293-294). Plaintiff reported a history of neck pain and frequent headaches for which Lortab and Hydrocodone provided no relief (AR 293). Physical examination of her neck revealed a slightly decreased range of motion with discomfort, but her upper extremities had a normal range of motion (AR 293). Her lower back examination was unremarkable, and her knee and ankle ranges of motion were intact (AR 293). Dr. Zielke diagnosed Plaintiff with cervicalgia, arthritis, myofascial pain syndrome and headaches (AR 293). He recommended laser therapy treatment for her "hands and neck" and prescribed Roxicodone (AR 293-294).

A cervical MRI conducted on January 3, 2008 showed multilevel degenerative changes without a significant degree of central canal stenosis or neural foramen encroachment (AR 291). Minor disc herniations were seen at C3-4 and C4-5, with minor disc bulging at C6-7 (AR 291).

Plaintiff was evaluated by Terry Hemlock, PT on February 6, 2008 (AR 288-289). Plaintiff reported a history of neck pain but denied any prior treatment for her pain (AR 288). She complained of neck pain and headaches, with occasional back pain (AR 288). She indicated that she slept well with medications, but tossed and turned "on all four sides," and hot showers provided temporary relief (AR 288). Mr. Hemlock noted that Plaintiff "appear[ed] to have neck pain" and he prescribed moist heat, electrical stimulation and an exercise program (AR 289).

On March 4, 2008, Plaintiff returned to Dr. Qureshi and complained of increased depression and sleep difficulties (AR 296). Dr. Qureshi reported that she was irritable with feelings of helplessness, her judgment was "fair" and her insight was "poor" (AR 296). Otherwise, her remaining mental status examination was within normal limits, and Dr. Qureshi increased her medication dosages (AR 296).

On April 14, 2008, Plaintiff reported to Dr. Qureshi that she was "feeling better" after her medication had been adjusted (AR 312). Dr. Qureshi found she was irritable with a depressed mood, but her judgment was within normal limits and her insight had improved to "fair" (AR 312). Her remaining examination was within normal limits (AR 312). By June 12, 2008, Plaintiff's mental status examination was within normal limits, and Dr. Qureshi reported that she was doing fairly well, although he noted she reported some financial stressors (AR 310).

Plaintiff's symptoms continued to improve on medication and when seen by Dr. Qureshi on September 4, 2008, her mental status examination was within normal limits, except she was still somewhat irritable (AR 309). Dr. Qureshi increased her medication dosage for her symptoms of irritability (AR 309).

Plaintiff and Paula Day, a vocational expert, testified at the hearing held by the ALJ on October 27, 2008 (AR 33-54). Plaintiff testified that she lived with her disabled husband and provided some care for him to the extent she was able (AR 38). She stopped working in January 2006 after a fire destroyed her bar/restaurant (AR 39). Plaintiff testified that she suffered from neck pain for which she took Vicodin three to four times per day, and had undergone six weeks of physical therapy (AR 40-41). Plaintiff claimed that neck pain limited her to standing no more than 30 to 45 minutes and that she spent most of the day in a recliner or lying down (AR 49). Plaintiff also stated that she suffered from hand cramps and diminished strength and could only lift five pounds (AR 49-50). Plaintiff claimed that her symptoms of depression had caused a loss of interest in activities and an inability to concentrate (AR 44; 51). She indicated that beginning in 2000, her concentration diminished after becoming involved in litigation related to the purchase of the bar (AR 47). She claimed at that point she became unable to concentrate on bookkeeping tasks (AR 47). She indicated that her husband handled their finances (AR 43). Plaintiff acknowledged that her medications helped with her symptoms of depression and anxiety (AR 42-43; 46). She stated she was able to drive locally, cook periodically, perform household chores and laundry once every two weeks, and shop occasionally without her husband (AR 43-44). She did not socialize except with family, was able to remember to take her medications, and her husband helped her remember appointments (AR 44; 46).

The vocational expert was asked to assume an individual of the same age, education and work experience as Plaintiff, who was able to perform medium work involving simple, routine work, limited to one- or two-step tasks (AR 52). The vocational expert testified that such an individual could perform the medium positions of a hangar/packager, kitchen helper and laundry worker II (AR 52).

Following the hearing, the ALJ issued a written decision which found that Plaintiff was not entitled to a period of disability or DIB within the meaning of the Act (AR 9-17). Her request for an appeal with the Appeals Council was denied rendering the ALJ's decision the final decision of the Commissioner (AR 1-5). She subsequently filed this action.

### III. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 1097, 229 (1938)); *see also Richardson v. Parales*, 402 U.S. 389, 401 (1971); *Ventura v. Shalala*, 55 F.3d 900, 901 (3rd Cir. 1995). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson*, 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.*, 48 F.3d 114, 117 (3rd Cir. 1995). Additionally, if the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 390. A district court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh evidence of record. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D.Pa. 1998); *see also Monsour Medical Center v. Heckler*, 806 F.2d 1185, 90-91 (3rd Cir. 1986) ("even where this court acting *de novo* might have reached a different conclusion … so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings."). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See* 5 U.S.C. § 706.

## IV. DISCUSSION

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen*, 482 U.S. at 141. If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past. Id. If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117. The ALJ concluded that the Plaintiff had the following severe impairments: neck disorder and mood disorder, but determined at step three that she did not meet a listing (AR 11-13). The ALJ found that she was able to perform medium work, except she was limited to work involving simple, routine, repetitive one- or two-step tasks involving few workplace changes and not requiring exposure to fast-paced settings (AR 13).

At the final step, the ALJ concluded that Plaintiff could perform the jobs cited by the vocational expert at the administrative hearing (AR 16-17). The ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible (AR 14). Again, I must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Plaintiff challenges the ALJ's decision on the grounds that his residual functional capacity ("RFC") assessment is not supported by substantial evidence because the ALJ erred in

10

his evaluation of the opinion evidence, as well as the medical evidence, with respect to both her alleged physical and mental impairments. "'Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec. Admin*. 220 F.3d 112, 121 (3rd Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3rd Cir. 1999)); *see also* 20 C.F.R. § 404.1545(a). An individual claimant's RFC is an administrative determination expressly reserved to the Commissioner. See 20 C.F.R. § 404.1546. In making this determination, the ALJ must consider all evidence before him. *Burnett*, 220 F.3d at 121.

Plaintiff first contends that the ALJ erred in according "great weight" to the opinion of Dr. Mari-Mayans, the non-examining state agency reviewing physician, who found that Plaintiff's only medically determinable impairment was the residuals from her gall bladder surgery, and that there was "no medical evidence of the claimant being treated for any joint disease" (AR 248). Based upon his review of the medical evidence of record as of February 8, 2007, Dr. Mari-Mayans concluded that Plaintiff had the RFC to perform medium work, which involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c). Plaintiff argues that the ALJ's reliance on this opinion was improper since it was based solely upon his review of the medical evidence relative to her gall bladder impairment and not her cervical impairment. I find this argument to be well taken.

The opinions of state agency reviewing physicians are weighed by stricter standards than treating source opinions. 20 C.F.R. § 404.1527(f); Social Security Ruling ("*SSR*") 96-6p, 1996 WL 374180 at *2 ("The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."). In this regard:

> …[T]he opinions of State agency medical … consultants … can be given weight only insofar as they are supported by the evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion

11

provided by the State agency medical … consultant … . The adjudicator must also consider all other factors that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical … consultant.

*SSR* 96-6p, 1996 WL 374180 at *2. In addition, the Commissioner's regulations provide:

[B]ecause nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all the pertinent evidence in your claim, including opinions of treating and other examining sources.

20 C.F.R. § 1527(d)(3); *see also SSR* 96-6p, 1996 WL 374180 at *3.

The ALJ failed to evaluate Dr. Mari-Mayans' opinion consistent with the above standards and accordingly, his decision to accord this opinion "great weight" was not supported by substantial evidence. Dr. Mari-Mayans did not review the medical records related to Plaintiff's cervical impairments, most notably the diagnostic studies, Dr. McLaughlin's treatment notes, the pain management consult with Dr. Zielke and the physical therapy records. This evidence showed that a cervical x-ray taken on December 6, 2007 revealed mild degenerative spondylitic spurring at the C6-7 level and to a lesser extent, at the C5-6 level (AR 295). An MRI conducted on January 3, 2008 showed multilevel degenerative changes with slight central canal stenosis at the C4-5 level, mild central canal stenosis at the C5-6 level, minor disc herniations at the C3-4 and C4-5 levels, and minor disc bulging at the C6-7 level (AR 291). Dr. McLaughlin's treatment notes document Plaintiff's treatment for complaints of neck and/or arthritic pain, and that she was consistently prescribed narcotic pain medication for her complaints (AR 279-280; 282; 285). Dr. Zielke evaluated Plaintiff for her complaints of chronic pain, and diagnosed her with cervicalgia, arthritis, myofascial pain syndrome and headaches, and recommended laser therapy treatment (AR 293-294). Dr. Zielke also prescribed narcotic medication (AR 2940. Plaintiff's physical therapist noted Plaintiff's neck pain, prescribing moist heat, electrical stimulation and an exercise program (AR 289).

Because Dr. Mari-Mayans did not have the benefit of the above evidence with respect to Plaintiff's neck impairment, the ALJ's reliance on his RFC assessment was in error. "An

assessment provided by a non-examining medical consultant is of limited probative value where the record indicates that the consultant was unaware of countervailing medical evidence." *Moffatt v. Astrue*, 2010 WL 3896444 at *6 (W.D.Pa. 2010); *see also Cortes v. Comm'r of Soc. Sec.*, 255 Fed. Appx. 646, 654 (3rd Cir. 2007) (finding that ALJ gave too much weight to the opinion of a non-examining medical consultant who reviewed only a small portion of the claimant's medical records). The ALJ recognized that Dr. Mari-Mayans' opinion was based upon her gall bladder impairment, but nonetheless adopted this opinion, stating that he had "resolved all doubt and concluded that the claimant's neck pain could be exacerbated by heavy work" (AR 15). The ALJ's attempt to construct Plaintiff's RFC based upon this opinion is the result of pure speculation and not supported by the record. *Morales v. Apfel*, 225 F.3d 310, 318-19 (3rd Cir. 2000) (the ALJ "should not substitute his lay opinion for the medical opinion of experts" or engage in "pure speculation" unsupported by the record). On remand, the ALJ must evaluate Dr. Mari-Mayans' opinion consistent with the applicable regulations.

I further find that the ALJ's decision is not supported by substantial evidence because it does not show a fair consideration of all the evidence. In evaluating a claim for benefits, the ALJ must consider all the evidence in the case. *Plummer v. Apfel*, 186 F.3d 422, 429 (3rd Cir. 1999). The Third Circuit has also directed that "[w]here competent evidence supports a claimant's claims, the ALJ must explicitly weigh the evidence," *Dobrowolsky v. Califano*, 606 F.2 403, 407 (3rd Cir. 1979), and "adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Sykes v. Apfel*, 228 F.3d 259, 266 (3rd Cir. 2000). Without this type of explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter v. Harris*, 642 F.2d 700, 705-07 (3rd Cir. 1981); *see also Plummer*, 186 F.3d at 429 (ALJ must give some reason for discounting the evidence he rejects).

In concluding that Plaintiff could perform medium work, the ALJ pointed to the following medical evidence: the findings contained in the January 2008 cervical MRI (AR 11; 291); her pain management consult with Dr. Zielke in December 2007, which showed a slightly decreased range of motion with discomfort (AR 11; 293); and an August 2006 treatment note

from Dr. McLaughlin which noted that Plaintiff had no physical complaints when she presented for a gynecological examination (AR 14; 227).

The ALJ erroneously concluded that the January 2008 cervical MRI revealed "no evidence of central canal stenosis" (AR 11), when in fact, it demonstrated slight central canal stenosis at the C4-5 level and mild central canal stenosis at the C5-6 level (AR 291). In addition to this erroneous finding, ignored by the ALJ without adequate explanation was Plaintiff's cervical x-ray dated December 6, 2007, which revealed mild degenerative spondylitic spurring at the C6-7 level and to a lesser extent, at the C5-6 level (AR 295).

The record also reveals that the ALJ's review of Dr. McLaughlin's treatment notes was selective and incomplete. For example, the ALJ highlights the fact that Plaintiff had no complaints when she presented for a gynecological examination in August 2006, but failed to discuss the later relevant treatment note entries. These notes reveal that beginning in March 2007, Plaintiff began treatment for ongoing cervical and arthritic pain, and was initially prescribed Motrin for her pain in June 2007 (AR 282; 285). Beginning in November 2007, however, Dr. McLaughlin began prescribing narcotic medication for her complaints of pain, such as Lortab, Hydrocodone and Tramadol (AR 274; 276; 278-280). According to *SSR* 96-7p, the ALJ "must consider" the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms." SSR 96-7p, 1996 WL 374186 at *3. The only reference to pain medication by the ALJ was in connection with his review of Dr. Zielke's evaluation, wherein he noted that Dr. Zielke prescribed a "new pain medication" in December 2007 (AR 11). On remand, the ALJ "must review all of the pertinent medical evidence, explaining his conciliations and rejections." Burnett, 220 F.3d at 121.

Similar deficiencies are found with respect to the ALJ's analysis of the medical evidence relative to Plaintiff's mental impairments. The ALJ acknowledged that Plaintiff underwent a psychiatric evaluation performed by Dr. Qureshi on April 24, 2007, and that her mood was depressed, she exhibited fair insight and judgment, had diminished concentration and a lack of motivation, and suffered from feelings of helplessness, hopelessness and worthlessness (AR 11-12). However, the ALJ failed to address substantial portions of the Stairways treatment records

arguably germane to Plaintiff's claimed mental impairments. For example, treatment entries reflect that Plaintiff complained of symptoms of depression and sleep disturbances, which at times improved, but at other times were noted to be worsening. Plaintiff reported at her May 24, 2007 visit that her depression had eased somewhat but her sleep problems persisted, and at her June 21, 2007 visit she was doing well on her medications (AR 298-299). At her August 15, 2007 visit she reported an increase in her depression and insomnia (AR 298). Dr. Qureshi noted on November 15, 2007 that her mood and affect were mildly depressed (AR 297). On March 9, 2008 Plaintiff complained of increased depression and Dr. Qureshi reported that she was irritable with feelings of helplessness, her judgment was fair and her insight poor (AR 296). On April 14, 2008, Plaintiff's symptoms had improved, but Dr. Qureshi reported that she was irritable with a depressed mood (AR 312). She continued to improve, although Dr. Qureshi found she was still irritable at her September 4, 2008 visit (AR 309). The Court does not suggest that these records *per se* establish that Plaintiff's mental impairments preclude her from working. The above findings contained in the records represent examples of "psychiatric signs," *see* 20 C.F.R. § 404.1528(b), which could constitute objective evidence supporting Plaintiff's claimed mental limitations. Accordingly, it was error for the ALJ to ignore these entries in his evaluation of the medical evidence and the ALJ is specifically directed to address this evidence on remand.

      Dr. Tarter, a state agency reviewing psychologist, concluded that Plaintiff could meet the basic mental demands of competitive work on a sustained basis (AR 257). The ALJ's decision does not reveal that he applied the more "rigorous tests" for weighing Dr. Tarter's opinion, *see SSR* 96-6p, 1996 WL 374180 at *2, and he failed to state how much weight he accorded her opinion. Moreover, as with Dr. Mari-Mayans, Dr. Tarter did not have the benefit of all of the medical evidence with respect to Plaintiff's mental impairments. This evidence included the Stairways treatment notes as detailed above, as well as the report from Dr. Meyer and Dr. Uran, the consulting psychologists who performed a psychological evaluation of the Plaintiff on January 25, 2007. On remand, the ALJ is directed to evaluate Dr. Tarter's opinion in light of the above.

15

Plaintiff further claims the ALJ improperly rejected the functional limitations set forth by Dr. Meyer and Dr. Uran in their report. In their report, they concluded that Plaintiff had difficulties with impulse control as marked by displays of anger, and that her functional limitations included difficulties interacting with others and social withdrawal (AR 240-241). The ALJ rejected this opinion on the grounds that: (1) it was a one-time consultative examination wherein the "claimant knew the information she supplied would determine whether she could obtain Medicaid or not;" and (2) it was "internally inconsistent" (AR 15). The ALJ cannot, however, "reject evidence for no reason or for the wrong reason." *Morales v. Apfel*, 225 F.3d 310, 317 (3rd Cir. 2000). In addition, the ALJ "should not substitute his lay opinion for the medical opinion of experts," or engage in "pure speculation" unsupported by the record. *Id*. at 318-19. The ALJ's rejection of Dr. Meyer and Dr. Uran's opinion does not comport with this standard.

The ALJ's conclusion that Plaintiff "knew" the consultative evaluation was being performed in connection with her application for Medicaid and therefore, her motives were implicitly suspect, is nothing more than pure speculation on the part of the ALJ. In addition, the ALJ noted that while the examiners found Plaintiff capable of handling her personal finances, they also found she had a poor prognosis for higher level functioning (AR 15). The ALJ also noted that the examiners found she was a "good narrator of her personal history", but also found that she had no memory of her childhood (AR 15). However, these findings are by no means inconsistent.

Finally, Plaintiff challenges the ALJ's credibility assessment, claiming that the ALJ improperly discredited her subjective complaints. An ALJ must consider subjective complaints by the claimant and evaluate the extent to which those complaints are supported or contradicted by the objective medical evidence and other evidence in the record. *See* 20 C.F.R. § 404.1529(a); *Hartranft*, 181 F.3d at 362. In assessing subjective complaints, *SSR* 96-7p and the regulations provide that the ALJ should consider the objective medical evidence as well as other factors such as the claimant's own statements, the claimant's daily activities, the treatment and medication the claimant has received, any statements by treating and examining physicians or

psychologists, and any other relevant evidence in the case record. *See* 20 C.R.R. § 404.1529(c); *SSR* 96-7p, 1996 WL 374186 at *2. As the finder of fact, the ALJ can reject, partially or fully, subjective complaints if he finds them not credible based on other evidence in the record. *See Baerga v. Richardson*, 500 F.2d 309, 312 (3rd Cir. 1974). The ALJ is empowered to evaluate the credibility of witnesses and his determination is entitled to deference by this Court. *See Van Horn v. Schweiker*, 717 F.2d 871, 873 (3rd Cir. 1983).

Here, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible (AR 14). In light of the Court's finding that the ALJ's review of the medical record was inadequate and that his treatment of the opinion evidence was not supported by substantial evidence, appropriate consideration could not have been given to the Plaintiff's subjective complaints. Consequently, the ALJ is directed to re-evaluate Plaintiff's credibility on remand.

## V. CONCLUSION

For the reasons discussed above, the Defendant's Motion will be denied and the Plaintiff's Motion will be granted only to the extent she seeks a remand for further consideration. The matter will be remanded to the Commissioner for further proceedings.[5] An appropriate Order follows.

---

[5] The ALJ is directed to reopen the record and allow the parties to be heard via submissions or otherwise as to the issue addressed in this Memorandum Opinion. *See Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 800-01 (3rd Cir. 2010).

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHARON E. LONGO, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 10-116 Erie |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

AND NOW, this 28th day of June, 2011, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Defendant's Motion for Summary Judgment [ECF No. 10] is DENIED, and the Plaintiff's Motion for Summary Judgment [ECF No. 7] is GRANTED only to the extent she seeks a remand for further consideration by the Commissioner. The case is hereby REMANDED to the Commissioner of Social Security for further proceedings consistent with the accompanying Memorandum Opinion.

The clerk is directed to mark the case closed.

                                              s/ Sean J. McLaughlin
                                                United States District Judge

cm:    All parties of record